IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRENNA L. MAWA,<br><br>                Plaintiff,<br>v.<br><br>HARTFORD LIFE & ACCIDENT INSURANCE COMPANY,<br><br>                Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cv-01044<br><br>District Judge Dale A. Kimball |

Before the court are cross motions for summary judgment in an ERISA case. Plaintiff Brenna Mawa claims to be disabled primarily due to fatigue, dizziness, and shortness of breath. Mawa asserts a claim for long term disability benefits under the Group Long Term Disability Plan for Employees of LHC Group, Inc. ("Plan"). The motions will be decided based on the administrative record.

## THE PLAN

Hartford is the claim administrator responsible for the determination of Long-Term Disability ("LTD") claims under the Plan. The plan has delegated to Hartford the "discretion to determine eligibility for benefits and to interpret the terms of the benefit plan.

The Plan requires a claimant to submit proof of loss showing that the claimant is disabled under the Plan's terms and conditions. The proof of loss "must be satisfactory" to Hartford. The payment of LTD benefits will end on "the date [a claimant is] no longer Disabled" under the Plan's terms.

The Plan's definition of disability focuses on whether a claimant can perform the duties of her own occupation. After a claimant receives 24 months of LTD benefits, the test for

1

disability changes to whether the claimant is able to perform any occupation. The Plan defines "Any Occupation" as "any occupation for which you are qualified by education, training or experience…" Rec. 34.

**BACKGROUND**

Plaintiff Brenna Mawa was a nurse and worked as a Branch Director and Clinical Director of LHC Group, Inc. ("LHC"). Mawa stopped working for LHC due to symptoms related to peripartum cardiomyopathy and subsequently applied for LTD benefits. On June 5, 2015, Hartford approved Mawa's claim for LTD. In the approval letter, Hartford advised Mawa that the test for disability would change to the Any Occupation Definition effective February 8, 2017.

On May 20, 2016, Roxann Koelln, an on-staff Hartford Nurse, interviewed Mawa by telephone about her status. Mawa reported that she had worsening symptoms of extreme fatigue/tired, feeling like she is going to black out upon standing which can last for prolonged period of times, shortness of breath with exertion, dizziness with bending and slight edema in legs and feet as the day goes on. She also reported that she cared for her four-year-old child who she can lift, but not carry around. Mawa further noted that she had lost 101 pounds since lap band placement in January 2016 and did light exercise.

Nurse Koelln asked Mawa whether she could return to work in a sedentary capacity. Mawa did not believe she could sit for more than a couple of hours due to her taking of coumadin. Nurse Koelln told Mawa that individuals work while on coumadin therapy and that seated work generally allows for the ability to stand and stretch, and to walk around when needed. Mawa said she would think about returning to work in some capacity once her symptoms were better controlled.

On June 27, 2016, Nurse Koelln called Mawa for an update. Mawa said that she had an echocardiogram on June 15, 2016. Mawa reported continued issues with blood pressure and dizziness. On June 28, 2016, Nurse Koelln sent a letter to Dr. Kristin Scott-Tillery, Mawa's attending physician, asking Dr. Scott-Tillery to comment on Mawa's work capacity. On July 12, 2016, Assistant Nurse Practitioner Terri Hancock responded on behalf of Dr. Scott-Tillery. Hancock indicated that Mawa was capable of part time sedentary work. Hancock noted that Mawa had pre-syncope episodes and hypertension, and that she had "significant limitations at this time."

On September 7, 2016, Dr. Stehlik examined Mawa. At the examination, Mawa reported less near syncope, but she still had some lightheadedness. Mawa told Dr. Stehlik that she tries to walk, and does some exercise videos for activity, and is thinking about purchasing a stationary bike. Stehlik's review of symptoms during the examination was negative for malaise/fatigue, claudication, dyspnea on exertion, near-syncope, orthopnea, shortness of breath, and muscle weakness. Rec. 281. Mawa tested positive for light-headedness based on her self-report. Mawa had a normal heart rate, regular rhythm, normal heart sounds, and intact distal pulses. Mawa exhibited normal psychiatric conditions with normal cognition and memory.

On September 28, 2016, Nurse Koelln sent a letter to Dr. Scott-Tillery asking whether Mawa was able to perform sedentary work on a full-time basis, and requested information supporting Dr. Scott-Tillery's opinion. On October 4, 2016, Hartford learned that Dr. Scott-Tillery had left the medical practice and moved to Montana. Mawa's new primary treating physician was Dr. Joseph Stehlik.

On October 6, 2016, Hartford referred the medical records for an independent physician peer review. Hartford provided 342 pages of medical records with the referral. Dr. Mark Eaton

3

summarized some of the medical records that he had reviewed. Dr. Eaton pointed out the inconsistency between a provider's statement regarding Mawa's inability to return to work and the clinical evidence showing Mawa's sustained improvement in cardiac function.

Dr. Eaton concluded that Mawa "would be capable of full-time work capacity 8 hours daily and 40 hours weekly" subject to certain restrictions and limitations. Rec. 460. Dr. Eaton found that Mawa would be capable of "a sedentary level occupation at this time – which is defined as involving lifting no more than 10 pounds at a time" with "sitting up to 6 hours out of an 8-hour work day with occasional walking and standing up to 2.4 hours out of the 8-hour work day." *Id*.

On November 14, 2016, one of Hartford's Rehabilitation Case Managers, Emily Rivera, MHS, CRC, submitted an Employability Analysis Report. Rivera used the Occupational access System ("OASYS") to determine Mawa's current employability. The OASYS is a computerized job matching system that cross references an individual's qualifications profile with 12,761 occupations classified by the U.S. Department of Labor in the 1991 Dictionary of Occupational Titles. Rivera applied OASYS to Mawa's education and work history. Rivera adjusted the functional capability of Mawa in accordance with Dr. Eaton's functional restrictions and limitations for her. The employability analysis identified 6 occupations within the closest level, 2 occupations within the good level, 131 occupations within the fair level, and 159 occupations within the potential level.

On November 22, 2016, Hartford's Ability Analyst interviewed Mawa by telephone. Mawa described her condition as "[a]bout the same with some good days and some bad." Rec. 60. Mawa said that "all [activities of daily living] performed independently, does require some

assistance w[ith] deep cleaning and grocery shopping, but cares for home/daughter mostly as [her spouse] travels for business." *Id*.

On January 5, 2017, Hartford concluded that Mawa was not prevented from performing the essential duties of "any occupation." Accordingly, Mawa's LTD benefits terminated on February 7th, 2017. Mawa's counsel submitted an appeal letter on June 27, 2017. Hartford referred Mawa's file to Exam Coordinators Network, a third-party vendor, to obtain an independent medical consultant review. Exam Coordinators Network assigned the review to Dr. Robert Weber, who is Board Certified in Cardiology and licensed to practice medicine in California.

On July 19, 2017, Dr. Weber submitted his report finding "no evidence to support the claimant is/was totally restricted from work activity as of February 8, 2017 through present." Rec. 259. Dr. Weber found that Mawa can perform work activities for 8 hours per day, 5 days per week, for 40-hour work weeks.

On July 24, 2017, Hartford issued its appeal determination finding that Mawa has the capability to perform at a full-time sedentary level occupation. Hartford informed Mawa that she had exhausted her administrative remedies under the Plan. *Id*.

## LEGAL STANDARD

Both parties agree that this case should be decided under the arbitrary and capricious standard. Under this highly deferential standard, the courts of the Tenth Circuit "will uphold the decision of the plan administrator 'so long as it is predicated on a reasoned basis,' and 'there is no requirement that the basis relied upon be the only logical one or even the superlative one.'" *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1134 (10th Cir. 2011) (quoting *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006).

An administrator's decision will be reasonable, if the administrator based the decision on substantial evidence in the Administrative Record before it. Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker." *Caldwell v. Life Ins. Co. of N. Am.,* 287 F.3d 1276, 1282 (10th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance" of evidence. *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.3d 377, 382 (10th Cir. 1992).

Where, as here, an entity that administers a plan both determines "whether an employee is eligible for benefits and pays benefits out of its own pocket, . . . this dual role creates a conflict of interest." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 114 (2008). A reviewing court should consider that conflict as a "factor in determining whether there is an abuse of discretion." *Id.*, 115 (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989) (internal quotation omitted)); *see also Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1182, 1193 (10th Cir. 2009). However, the Supreme Court emphasized that "conflicts are but one factor among many that a reviewing judge must take into account." *Glenn*, 554 U.S. at 117.

## DISCUSSION

Both parties filed motions for summary judgment in this case. Because the motions cover the same substantive issues, the motions will be decided together.

Hartford argues that the medical evidence showed that Mawa's condition had improved and that she was capable of sedentary work. Hartford argues: 1) the administrative record evidence demonstrated that Mawa's actual functionality and activity level exceed her self-reported limitations; 2) the medical evidence showed that Mawa's condition had improved and that she was capable of sedentary work; 3) the independent physician peer reviews provided substantial evidence that Mawa was capable of sedentary work; and 4) the employability analysis

6

report provided substantial evidence that Mawa was capable of sedentary work. Mawa responds arguing that this case should be remanded because Hartford based the Employability Analysis Report on Dr. Eaton's recommendation and did not conduct a new employability analysis report based on Dr. Weber's subsequent medical evaluation. Mawa concedes all four of the Defendant's arguments for summary judgment. Mawa concedes that the medical opinions were accurate, that Mawa is capable of sedentary work, that the independent physician peer reviews provided substantial evidence that Mawa was capable of sedentary work, and that the employability analysis report provided substantial evidence that Mawa was capable of sedentary work. Accordingly, the court will focus its analysis on the issue of whether Hartford should have conducted a new employability analysis report based on Dr. Weber's subsequent medical evaluation.

On October 6, 2016, Dr. Eaton reviewed Mawa's medical records and recommended the following restrictions for Mawa:

> restricting the claimant to a sedentary level occupation at this time – which is defined as involving lifting no more than 10 pounds at a time. Sitting up to 6 hours of an 8 hour workday with occasional walking and standing up to 2.5 hours out of an 8 hour work day. Although sitting is primarily involved in a sedentary job, walking and standing should be required only occasionally. There would be no restrictions with regards to the use of upper extremities such as reaching below waist, above shoulder, at desk/bench level, handle, finger and feel (no restriction with regards to frequency). There are no recommended restrictions with regards to driving. I would restrict the claimant from climbing, kneeling, balancing and/or crouching at this time.

Based on those restrictions, Emily Rivera, MHS, CRC performed an Employability Analysis Report. She concluded that Dr. Eaton's restrictions would allow for the performance of three jobs that would accommodate not only Plaintiff's physical restrictions, but would also return Plaintiff to an occupation that would retain some semblance of Plaintiff's previously acquired

7

station-in-life. Those three jobs were "Utilization-Review Coordinator"; "Director, Volunteer Services"; and "Director, Nursing Service." Rec. 0443.

On July 19, 2017, Dr. Weber conducted an additional medical examination and submitted his report finding "no evidence to support the claimant is/was totally restricted from work activity as of February 8, 2017 through present." Dr. Weber provided an opinion that Plaintiff was capable of performing sedentary work activity: with the following medically, necessary work activity restrictions:

> Sit – constant for 8 hours a day in an 8-hour workday for a max of 2 hours at a time, with the ability to stand/walk for 5 minutes per episode Stand – frequent for 3.5 hours a day in an 8-hour workday for a max of 30 minutes to alternate with sit/walk Walk – frequent for 3.5 hours a day in an 8-hour workday for a max of 30 minutes, to alternate with sit/stand, Reach – constant at desk level and occasional overhead/below waist, Lift/Carry/Push/Pull – occasional 10 lbs. Climb Stairs – occasional, Climb Ladders – occasional, Balance – occasional, Stoop – occasional, Kneel – occasional, Crouch – occasional, Crawl – occasional, See – constant, Hear – constant, Use Lower Extremities (foot controls) – constant.

Mawa argues that the Employability Analysis Report was based on Dr. Eaton's recommendation and that a new report was not generated based on Dr. Weber's recommendation. Mawa concedes that the doctors medical opinions were similar, and Mawa does not point to a substantive difference that would require a new Employability Analysis Report.

Hartford argues that after its receipt of Dr. Weber's independent peer review report, Hartford considered whether the occupations identified in the Employability Analysis Report of November 14, 2016 continued to be valid based on the functional restrictions and limitations identified in Dr. Weber's report. Hartford concluded that the Employability Analysis Report remained valid. Mawa does not argue why she believes Dr. Weber's medical recommendation requires a new Employability Analysis Report. Accordingly, the court finds that Dr. Weber's

medical recommendation was similar to Dr. Eaton's and therefore it was not necessary for Hartford to conduct a new Employability Analysis Report.

The court concludes that Hartford reasonably concluded that Mawa was capable of sedentary work and that she does not meet the standard of not being able to perform "any occupation" as defined by the Plan. Accordingly, Hartford's Motion for Summary Judgment is GRANTED and Mawa's Motion for Summary Judgment is DENIED.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED (Dkt. No. 23) and Plaintiff's Motion for Summary Judgment is DENIED. (Dkt. No. 26).

Dated this 18th day of January 2019.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge